

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
09/03/2009
**ENTERED**
**08/26/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NORTH BAY GENERAL HOSPITAL, INC., | § | CASE NO. 08-20368 |
| | § | (CHAPTER 11) |
| DEBTOR. | § | |

## ORDER APPROVING MOTION TO COMPROMISE CONTROVERSY

A - North Bay General Hospital, Inc. vs. Thomas McNaull, Individually;
Walker Wilcox Matousek Texas, P.C. f/k/a McClain & Patchin, P.C.;
Arent Fox LLC; Schuyler G. Carroll, Barnet B. Skelton, Jr., P.C.;
Clear Thinking Group, LLC; Joseph Myers; and Daniel F. Patchin –
Adversary No. 08-3422; and

B – North Bay General Hospital, Inc. v. Thomas McNaull and
AMT Group, Inc. – Adversary No. 08-3489.

The Court has considered North Bay General Hospital, Inc.'s (the "Hospital") Motion to Compromise Controversy Under Rule 9019 of the Federal Rules of Bankruptcy Procedure. The proposed compromise meets the requirements for a compromise as outlined in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) and should be approved. The Court finds that the proposed settlement is fair and equitable. The Court further finds that adequate notice of the motion and the hearing on the motion has been given to all creditors and parties-in-interest. Accordingly, it is therefore

**ORDERED THAT:**

1.    The Motion to Compromise Controversy under Bankruptcy Rule 9019 with the parties in Adversary Proceeding Nos. 08-3422 and 08-03489 (collectively the "Adversaries") is **GRANTED**.

2.    The Comprehensive Mediated Settlement Agreement attached hereto as Exhibit "A" is approved.

3.    Within the later of fifteen (15) days of entry of this Order or five (5) days after this Order becomes final and nonappealable,

a)    Thomas McNaul ("McNaull") and/or AMT Group, Inc. ("AMT") shall pay to the Hospital One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) in cash and execute and deliver to the Hospital's counsel the signature page of the Mutual Release attached hereto as Exhibit "B";

b)    Intentionally Deleted;

c)    Clear Thinking Group, LLC ("CTG") and/or Joseph Myers ("Myers") shall pay to the Hospital One Hundred Thousand and no/100 Dollars ($100,000.00) in cash and execute and deliver to the Hospital's counsel the signature page of the Mutual Release attached hereto as Exhibit "C";

d)    Barnet B. Skelton, Jr. ("Skelton") and/or Barnet B. Skelton, Jr., P.C. ("Skelton P.C.") shall pay to the Hospital Ten Thousand and no/100 Dollars ($10,000.00) in cash and execute and deliver to the Hospital's counsel the signature page of the Mutual Release attached hereto as Exhibit "D";

e)    Walker Wilcox Matousek Texas, P.C. ("WWM") and/or Daniel F. Patchin ("Patchin") shall pay to the Hospital Six Hundred and Fifty Thousand and no/100 ($650,000.00) in cash and execute and deliver to the Hospital's counsel the signature page of the Mutual Release attached hereto as Exhibit "E";

f)    Schuyler G. Carroll ("Carroll or UCA") and/or Arent Fox LLP ("Arent Fox") shall pay to the Hospital Five Hundred Sixty Six Thousand and No/100 Dollars ($566,000.00) in cash ("to be paid as provided in paragraph 4 below");

g)    McNaull, AMT, CTG, Myers, Skelton, Skelton, P.C., WWM, Patchin, Carroll and Arent Fox shall execute and deliver the Mutual Release Among the Defendants, a copy of which is attached as Exhibit "G"; and

h)    All payments to be made hereunder shall be made to the Hospital's counsel's trust account to be held pursuant to the U.S. Trustee's guidelines and subject to further order of this Court.

4.    Carroll and Arent Fox shall pay to the Hospital as follows: a) Three Hundred One Thousand and no/100 Dollars ($301,000.00) in cash within fifteen (15) days of entry of this Order; and b) Two Hundred Sixty Five Thousand and no/100 Dollars ($265,000.00) in cash on or

2

before January 10, 2010. Carroll and Arent Fox shall execute, within fifteen days (15) of entry of this Order, the signature page of the Mutual Release attached hereto as Exhibit "F". Ms. Jacks, counsel for Arent Fox and Carroll, shall hold, in escrow, the executed signature page of the Mutual Release and deliver it to the Hospital's counsel as set forth more fully in paragraph 9 below.

5.      The Hospital shall, upon the receipt of the $150,000.00 cash payment made by McNaull and/or AMT, a) execute and deliver to McNaull's counsel the Mutual Release in the form of Exhibit "B"; and b) execute and file the respective Agreed Stipulation of Dismissal.

6.      The Hospital shall, upon the receipt of the $100,000.00 cash payment made by CTG and/or Myers, a) execute and deliver to both counsel for CTG and Myers the Mutual Release in the form of Exhibit "C"; and b) execute and file the respective Agreed Stipulation of Dismissal.

7.      The Hospital shall, upon the receipt of the $10,000.00 cash payment made by Skelton and/or Skelton, P.C., a) execute and deliver to Skelton the Mutual Release in the form of Exhibit "D"; and b) execute and file the respective Agreed Stipulation of Dismissal.

8.      The Hospital shall, upon the receipt of the $650,000.00 cash payment made by WWM and/or Patchin, a) execute and deliver to Patchin's counsel the Mutual Release in the form of Exhibit "E"; and b) execute and file the Agreed Stipulation of Dismissal of WWM and Patchin.

9.      Upon the Hospital's receipt of the $301,000.00 from Arent Fox and/or Carroll, the Hospital shall execute the Mutual Release in the form of Exhibit "F", and counsel for the Hospital shall hold, in escrow, the executed signature page of the Mutual Release pending Arent Fox's payment in full of $566,000.00 cash payment.  The Hospital shall, upon the receipt of the

$566,000.00 cash payments made by Arent Fox and/or Carroll, a) deliver to Arent Fox's counsel the executed signature page of the Mutual Release in the form of Exhibit "F"; and b) file the Agreed Stipulation of Dismissal of Arent Fox and Carroll. At the same time, Ms. Jacks shall deliver to the Hospital's counsel Arent Fox's and Carroll's signature page of the Mutual Release.

10.   Upon the Hospital's receipt of the $566,000.00 from Arent Fox and/or Carroll, Arent Fox shall be deemed to have an allowed, general unsecured claim against the Hospital's bankruptcy estate in the amount of $144,696.93; provided that Arent Fox's claim is subordinated to all other unsecured claims and Arent Fox shall not participate in a distribution from the Hospital or its bankruptcy estate until the Hospital's unsecured creditors, with allowed unsecured claims, receive a fifteen percent (15%) distribution; thereafter, Arent Fox shall participate in any further distributions to unsecured creditors on a pro rata basis.

11.   The claims, if any, of McNaull, AMT, CTG, Myers, Skelton, Skelton, P.C., WWM, Patchin and Carroll against the Hospital or its bankruptcy estate are released, withdrawn and waived. The proof of claim of WWM, Claim No. 43, is **DENIED**.

12.   This Court has previously ruled that the UCA lacks the authority to represent the Class 6 general unsecured creditors from the 2005 case under the Second Amended Chapter 11 Plan of Reorganization in Case No. 05-32121 in the Hospital's 2008 bankruptcy case. *In re North Bay General Hospital, Inc.*, 404 B.R. 443, 452 (Bankr. S.D. Tex. 2009). The UCA's duties, if any, to the Hospital or its 2008 bankruptcy estate are terminated upon entry of this Order.

13.   The Hospital is authorized to take all actions necessary to implement the foregoing settlement. The signature of Jay Stacy, President of the Hospital, shall be and he is hereby the authorized representative of the Hospital.

14.   The Court shall retain jurisdiction to interpret this Order and to resolve all disputes arising under or out of this Order, the Agreement and Mutual Releases, including the amount and character of any claim asserted by any Party hereto.

15.   Notwithstanding the deadlines set in this Order for certain acts to occur within 15 days of entry of this Order, the actions shall not be taken until this Order is final and non-appealable.

16.   All Parties to the compromise and settlement being approved hereby shall execute and deliver any and all documents reasonably necessary to effectuate the intent of the compromise and settlement.

17.   Nothing contained in this Order Approving Motion To Compromise Controversy, the Motion to Compromise Controversy, the Comprehensive Mediated Settlement Agreement, any of the releases executed in relation to this compromise, or any future note or document to be executed in furtherance of this compromise shall be read or interpreted to preclude any party hereto or any person with information concerning the issues, actions, or matters raised in the proceedings being settled herein from discussing such information or responding to formal or informal requests for information from any federal, state or local governmental authority or regulatory agency of any kind, including, but not limited to the Office of the United States Trustee.

18.   Each Agreed Stipulation of Dismissal shall constitute a complete and final order with respect to all claims by, through or on behalf of the Hospital or this bankruptcy estate (including any trustee or other individual subsequently acting for the estate) and against the Defendants named therein, and shall be binding upon, and have further preclusive effect against, all parties, including the Hospital, all of its creditors asserting derivative claims or claims that

5

were or that could have been asserted in the Adversary Proceeding, the U.S. Trustee and the named Defendants with respect to any amounts that may be claimed as actual, punitive or exemplary damages payable to or for the benefit of the estate.

SIGNED this 26th day of August, 2009.

_____
JEFF BOHM
UNITED STATES BANKRUPTCY JUDGE

AGREED, APPROVED AND ENTRY REQUESTED:

HIRSCH & WESTHEIMER, P.C.

By: /s/ Michael J. Durrschmidt
     Michael J. Durrschmidt
     Texas Bar No. 06287650
     700 Louisiana, Floor 25
     Houston, Texas 77002
     Telephone: 713-220-9165
     Facsimile: 713-223-9319
     E-mail: mdurrschmidt@hirschwest.com

Counsel to North Bay General Hospital, Inc.

MEHAFFY WEBER, P.C.

By: /s/ Susan Hardie Jacks
     Susan Hardie Jacks
     Texas Bar No. 08957600
     500 Dallas, Suite 1200
     Houston, Texas 77002
     Telephone: 713-655-1200
     Facsmile: 713-655-0222
     E-mail: susanjacks@mehaffyweber.com

Counsel to Arent Fox LLP and Schuyler G. Carroll

BARNET B. SKELTON, JR., P.C.

By: /s/  Barnet B. Skelton, Jr.
     Barnet B. Skelton, Jr.
     Texas Bar No. 18456400
     1111 Bagby, 47th Floor
     Houston, Texas 77002
     Telephone: 713-659-8761
     Facsimile: 713-659-8764
     E-mail: barnetbjr@msn.com

Counsel to Barnet B. Skelton, Jr., P.C.


WALKER WILCOX MATOUSEK TEXAS, P.C. F/K/A MCCLAIN & PATCHIN, P.C.

By: /s/ Daniel F. Patchin
     Daniel F. Patchin
     Texas Bar No. 15561400
     711 Louisiana, Suite 3100
     Houston, Texas 77002
     Telephone: 713-654-8001
     Facsimile: 713-654-8818
     E-mail: dpatchin@wwmlawyers.com


CRUSE, SCOTT, HENDERSON & ALLEN LLP

By: /s/  Allison Standish Miller
     Allison Standish Miller
     Texas Bar No. 24046440
     Billy Shepherd
     Texas Bar No. 18219700
     2777 Allen Parkway, 7th Floor
     Houston, Texas 77019
     Telephone: 713-650-6600
     Facsimile: 713-650-1720
     E-mail: amiller@crusescott.com

Counsel for Walker Wilcox Matousek Texas, P.C. f/k/a McClain & Patchin, P.C. and Daniel F. Patchin

SCHREEDER, WHEELER & FLINT, LLP

By:  /s/  John A. Christy
      John A. Christy
      Georgia Bar No. 125518
      1100 Peachtree Street, Suite 800
      Atlanta, Georgia 30309-4516
      Telephone: 404-954-9819
      Facsimile: 404-681-1046
      E-mail: jchristy@swfllp.com

Counsel for Thomas McNaull


MORGAN, LEWIS & BOCKIUS LLP

By:  /s/  F. Teresa Garcia-Reyes
      F. Teresa Garcia-Reyes
      Texas Bar No. 24045918
      1000 Louisiana, Suite 4200
      Houston, Texas 77002
      Telephone: 713-890-5182
      Facsimile: 713-890-5001
      E-mail: tgarcia-reyes@morganlewis.com

Counsel for Clear Thinking Group, LLC


MUNSCH HARDT KOPT & HARR

By:  /s/ Lynn Chuang Kramer
      Lynn Chuang Kramer
      Texas Bar No. 24036930
      700 Louisiana, Suite 4600
      Houston, Texas 77002
      Telephone: 713-222-4020
      Facsimile: 713-222-1475
      E-mail: lkramer@munsch.com

Counsel for Joseph Myers

20080436.20080436/579215.2

## COMPREHENSIVE MEDIATED SETTLEMENT AGREEMENT

This Comprehensive Mediated Settlement Agreement is entered into on July 24, 2009 by and between all of the following parties:

- North Bay General Hospital, Inc. ("North Bay")
- Thomas McNaull,
- Walker Wilcox Matousek Texas, P.C., f/k/a McClain & Patchin, P.C.
- Daniel F. Patchin
- Arent Fox, LLP
- Schuyler G. Carroll
- Barnet B. Skelton, Jr., P.C.
- Barnet B. Skelton, Jr.
- Clear Thinking Group, LLC
- Joseph Myers
- AMT Group, Inc.

This Agreement was reached following an extended, two-day mediation before United States Bankruptcy Judge Marvin Isgur, who was appointed by The Honorable Jeff Bohm as a mediator with respect to the dispute between the parties.

This Agreement settles all disputes between the parties, including without limitation, those disputes in Adversary Proceeding 08-3422 and Adversary Proceeding 08-3489.

1. Each of the parties, other than Arent Fox, LLP, releases all proofs of claim, claims for administrative expenses or other claims against North Bay General Hospital, Inc. and its estate.

2. Thomas McNaull and AMT Group, Inc. settle all claims made or that could have been made by North Bay General Hospital, Inc. as follows:

    A. McNaull and AMT Group, Inc. deny any and all wrongdoing and liability and make this settlement solely to resolve disputed matters.

    B. Within 15 days following approval of this Agreement by the United States Bankruptcy Court for the Southern District of Texas, McNaull and/or AMT shall pay North Bay the sum of $150,000.00 in cash.

    C. Within 15 days following approval of this Agreement by the United States Bankruptcy Court for the Southern District of Texas, AMT Group, Inc. shall tender its promissory note (the "AMT Note) in the amount of $565,000.00 payable to North Bay.   The promissory note shall contain commercially reasonable terms, with the following economic provisions:

        (i) The interest rate shall be LIBOR plus 5%.
        (ii) Payments shall be in 12 equal quarterly installments with the first installment due on October 31, 2009.

(iii)The note shall not be secured nor guaranteed.

(iv)The note shall be assignable by North Bay to Arent Fox, LLP and thereafter shall not be assignable or negotiable to any person.

(v) The balance of the terms shall be negotiated between AMT Group, Inc. and the purchaser of the note, as set forth below.

D. Upon receipt of the cash and the note as herein provided, North Bay shall execute a full release of AMT Group, Inc., Thomas McNaull and RSUI Indemnity Company. The release shall be comprehensive and cover all acts or omissions from the beginning of time through the date of its execution, including matters known and unknown.

3. Clear Thinking Group, LLC and Joseph Myers settle all claims made or that could have been made by North Bay General Hospital, Inc. as follows:

A. Clear Thinking Group and Joseph Myers deny any and all wrongdoing and liability and make this settlement solely to resolve disputed matters.

B. Within 15 days following approval of this Agreement by the United States Bankruptcy Court for the Southern District of Texas, Clear Thinking Group and Joseph Myers shall pay North Bay the sum of $100,000.00 in cash.

C. Upon receipt of the cash as herein provided, North Bay shall execute a full release of Clear Thinking Group and Joseph Myers. The release shall be comprehensive and cover all acts or omissions from the beginning of time through the date of its execution, including matters known and unknown.

4. Barnet B. Skelton, Jr. and Barnet B. Skelton, Jr., P.C. settle all claims made or that could have been made by North Bay General Hospital, Inc. as follows:

A. Barnet B. Skelton, Jr. and Barnet B. Skelton, Jr., P.C. deny any and all wrongdoing and liability and make this settlement solely to resolve disputed matters.

B. Within 15 days following approval of this Agreement by the United States Bankruptcy Court for the Southern District of Texas, Barnet B. Skelton, Jr. and Barnet B. Skelton, Jr., P.C.shall pay North Bay the sum of $10,000.00 in cash.

C. Upon receipt of the cash as herein provided, North Bay shall execute a full release of Barnet B. Skelton, Jr. and Barnet B. Skelton, Jr., P.C.. The release shall be comprehensive and cover all acts or omissions from the beginning of time through the date of its execution, including matters known and unknown.

5.  Walker Wilcox Matousek Texas, P.C., f/k/a McClain & Patchin, P.C. and Daniel F. Patchin settle all claims made or that could have been made by North Bay General Hospital, Inc. as follows:

    A.  Walker Wilcox Matousek Texas, P.C., f/k/a McClain & Patchin, P.C. and Daniel F. Patchin deny any and all wrongdoing and liability and make this settlement solely to resolve disputed matters.

    B.  Within 15 days following approval of this Agreement by the United States Bankruptcy Court for the Southern District of Texas, Walker Wilcox Matousek Texas, P.C., f/k/a McClain & Patchin, P.C. and Daniel F. Patchin shall pay North Bay the sum of $650,000.00 in cash.

    C.  Upon receipt of the cash as herein provided, North Bay shall execute a full release of Walker Wilcox Matousek Texas, P.C., f/k/a McClain & Patchin, P.C. and Daniel F. Patchin and of Texas Lawyers' Insurance Exchange.  The release shall be comprehensive and cover all acts or omissions from the beginning of time through the date of its execution, including matters known and unknown.

6.  Schuyler G. Carroll, and Arent Fox LLP settle all claims made or that could have been made by North Bay General Hospital, Inc. as follows:

    A.  Schuyler G. Carroll, and Arent Fox LLP deny any and all wrongdoing and liability and make this settlement solely to resolve disputed matters.

    B.  Within 15 days following approval of this Agreement by the United States Bankruptcy Court for the Southern District of Texas, Schuyler G. Carroll, and Arent Fox LLP shall pay North Bay the sum of $1,000.00 in cash.

    C.  Arent Fox LLP hereby subordinates all of its claims, against North Bay, to a 15% dividend payable to general unsecured creditors.

    D.  Upon receipt of the cash provided in this paragraph 6 and in paragraph 7, North Bay shall execute a full release of Schuyler G. Carroll, and Arent Fox LLP.  The release shall be comprehensive and cover all acts or omissions from the beginning of time through the date of its execution, including matters known and unknown.

7.  Within 15 days following approval of this Agreement by the United States Bankruptcy Court for the Southern District of Texas, Arent Fox, LLP agrees to purchase the AMT Note, at the par price of $565,000.00, paid (i) $300,000 in cash to North Bay on such date; and (ii) $265,000 in cash to North Bay paid on or before January 10, 2010. The purchase of the AMT note shall be without recourse to North Bay. Upon North Bay's receipt of the $565,000 in cash pursuant to paragraph 7, Arent Fox, LLP will have an allowed, general unsecured claim against North Bay in the amount of $144,696.93 as its sole claim against North Bay.

8. Arent Fox, LLP represents that it has had a full opportunity to determine the market value of the AMT Note and of AMT's financial condition and is fully satisfied with its determination. Having been so satisfied, no events arising with respect to AMT or otherwise either before or after this date shall absolve Arent Fox of its obligation to purchase the AMT Note.

9. The parties recognize that this Agreement will be disclosed as part of the process of obtaining approval of the United States Bankruptcy Court for the Southern District of Texas. Except for the required disclosures to the Bankruptcy Court and other disclosure that may be required by law, no party shall disseminate this Agreement or attempt to publicize its existence or content. Violations of these provisions shall be punishable as a contempt of the Bankruptcy Court.

10. This Agreement is subject, in its entirety, to the approval of the United States Bankruptcy Court for the Southern District of Texas. North Bay shall file its 9019 motion seeking approval of the compromises contained herein, which motion shall be filed after review and an opportunity for comment by each party. The motion shall contain an accurate statement that—at the mediation—each settling party fully presented its explanation regarding the allegations made against that party and North Bay fully considered such explanations in reaching the decision to settle the disputes for the amounts set forth herein. If there is a disagreement regarding the form of the motion, the parties shall discuss such disagreement with Judge Isgur in his capacity as mediator. If the dispute is not resolvable, then North Bay shall proceed with the motion. The proposed order approving the compromise shall include the termination of any of the settling parties as fiduciaries to North Bay or its estate, including the termination of the Unsecured Creditor Agent and the termination of any of their respective obligations.

11. If this Agreement is not approved by the United States Bankruptcy Court for the Southern District of Texas, then the parties shall be returned to the status quo as of 9:00 a.m. on July 23, 2009.

12. No party hereto shall have any right of contribution by any other party herein and all claims and cross claims are fully resolved by the compromise. Except for the performance of obligations set forth in this Agreement, this Agreement is intended to constitute a full release of all claims o f any party against any other party with respect to the subject matter of this Agreement. This cross release is comprehensive and covers all acts or omissions from the beginning of time through the date of execution, including matters known and unknown.

13. Each of the parties hereto shall take no action that would diminish the probability that this compromise will be approved by the United States Bankruptcy Court and each party shall reasonably cooperate in obtaining the requisite approval from the Bankruptcy Court.

14. If any disagreement arises between the parties as to the content or form of any document that is required to be executed to consummate this Agreement, the parties (i) shall return to mediation before Judge Isgur; and (ii) if the mediation before Judge Isgur fails, be bound by the determination made by Judge Bohm in the enforcement of this Agreement.

15. Each release granted herein shall be in broad form, without limitations, and shall include releases of all officers, directors, agents, heirs, employees, insurers, family members and attorneys of the released party.

16. Although this Agreement is subject to approval by the Bankruptcy Court, each of the parties hereto is bound by this Agreement upon its execution until and unless the Bankruptcy Court denies its approval.

17. Adversary proceedings 08-3422 and 08-3489 shall be dismissed with prejudice against each party at the time that such party has fully performed its obligations under this Agreement; provided, the dismissal of AMT shall be effective upon its delivery of the AMT Note.

18. This agreement provides that certain actions shall be taken within 15 days of approval of the United States Bankruptcy Court. Notwithstanding such deadline, the actions shall not be taken until the order of the Bankruptcy Court is final and non-appealable.

19. This Agreement is binding on all successors to North Bay, including any trustee, examiner, committee or other estate representative.

20. Each signatory represents that the signatory has the authority to act in the capacity contained in this document.

21. This Agreement is governed by Texas law and is enforceable in the United States Bankruptcy Court for the Southern District of Texas.

Executed on July 24, 2009.

North Bay General Hospital, Inc.
By Cynthia B. Foster, its authorized agent

Thomas McNaull, Individually

Walker Wilcox Matousek Texas, P.C.,
f/k/a McClain & Patchin, P.C. by Daniel F. Patchin,
its authorized agent

Daniel F. Patchin, Individually

Page 5

_____
Arent Fox, LLP, by Carol Connor Cohen, its
authorized agent

_____
Schuyler G. Carroll, Individually

_____
Barnet B. Skelton, Jr., P.C., by Barnet Skelton, Jr.,
Its authorized agent

_____
Barnet B. Skelton, Jr., Individually

_____
Clear Thinking Group, LLC, by Stuart Kessler, Its
authorized agent

_____
Joseph Myers, Individually

_____
AMT Group, Inc., by Thomas McNaull, Its
authorized agent

## MUTUAL RELEASE AGREEMENT BY AND AMONG NORTH BAY GENERAL HOSPITAL, INC, AMT GROUP, INC. AND THOMAS MCNAULL

THIS MUTUAL RELEASE AGREEMENT (the "Agreement") is executed effective as of September ___, 2009 by and among North Bay General Hospital, Inc. ("North Bay" or the "Hospital") on the one hand, and AMT Group, Inc. and Thomas McNaull ("Defendant" whether one or more) on the other hand.

### RECITALS

WHEREAS, North Bay originally filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on February 9, 2005 in the United States Bankruptcy Court for the Southern District of Texas – Houston Division, Case No. 05-32121 (the "2005 Case"). At that time North Bay was a wholly owned subsidiary of AMT Group, Inc. ("AMT"). AMT is owned by Thomas McNaull ("McNaull").

WHEREAS, Daniel Patchin ("Patchin") of the law firm of Walker Wilcox Matousek, LLP f/k/a McClain & Patchin, P.C.; ("WWM") was bankruptcy counsel for North Bay in the 2005 Case. In April of 2005, an unsecured creditors committee (the "Committee") was formed. At the initial meeting of the Committee, Arent Fox, LLP ("Arent Fox") was selected as counsel for the Committee and Barnet B. Skelton, Jr., P.C. ("Skelton") was selected as local counsel for the Committee. Joseph Myers ("Myers") of Clear Thinking Group, LLC ("CTG") appeared, via a proxy, at the initial Committee meeting on behalf of Alliance Imaging.

WHEREAS, the 2005 Case resulted in a consensual plan of reorganization (the "Plan") which was confirmed on June 21, 2006. Schuyler G. Carroll ("Carroll" or "UCA") was appointed as the Unsecured Creditor Agent under the Plan. The Plan had an Effective Date of approximately July 31, 2005. While the Plan was agreed to by North Bay, its creditors, and

McNaull, the Plan was not successful. On July 8, 2008, North Bay filed the present bankruptcy case, Case No. 08-20368.

WHEREAS, on October 31, 2008, North Bay initiated adversary proceeding No. 08-3422.

WHEREAS, On December 30, 2008, the Debtor filed its Complaint against McNaull and AMT seeking to collect on the causes of action preserved in the 2005 Plan thereby initiating adversary proceeding No. 08-03489. On January 30, 2009, McNaull and AMT filed their motion to withdraw the reference seeking to have the matter considered by a United States District Judge. North Bay responded to the motion to withdraw the reference on April 21, 2009. (Adversary Proceedings Nos. 08-03422 and 08-03489 are collectively referred to as "Litigation".)

WHEREAS, the Debtor filed a Motion for Summary Judgment against McNaull. On July 23 and 24, 2009, the Parties mediated allegations and defenses of the Parties to the Litigation before Judge Marvin Isgur.

WHEREAS, the Defendant denies all of the allegations made in the Litigation and denies any wrongdoing.

WHEREAS, in order to avoid the inconvenience and expense of litigation, the Hospital and Defendant desire to compromise and settle all matters and disputes relating directly or indirectly to any or all claims in the Litigation, whether known or unknown, and entered into a Comprehensive Mediated Settlement Agreement. The Agreement has been approved by the Honorable Judge Bohm.

2

EXHIBIT B

## TERMS

Therefore, for and in consideration of the payment referred to herein, the resolution of the matters and disputes between The Hospital and Defendant, and the mutual promises, covenants, and conditions set forth herein and in the Agreement, the parties agree as follows:

1.    <u>Payment to the Hospital</u>. Defendant has paid to the Hospital the sum of One Hundred Fifty Thousand and No/100 ($150,000.00).

2.    <u>Dismissal of Litigation</u>.   In further consideration of the parties' promises, obligations, and other actions agreed to be undertaken under this Agreement, and contemporaneously with the execution of this Agreement by each of the parties, the Hospital agreed to dismiss the Litigation with prejudice as to all claims asserted, or which may have been asserted.

3.    <u>Release by the Hospital</u>. For and in consideration of the payment of the amounts set forth in Paragraph 1 herein, and the release set forth below, the Hospital, for itself, successors (including any trustee, receiver, examiner, committee or estate representations), parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representatives, hereby releases, acquits, and forever discharges of and from the Claims Defendant and their respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives.

4.    <u>Release by Defendant</u>. For and in consideration for the Hospital accepting the Payment and dismissing the Litigation, the Defendant, for themselves and their respective

successors, parents, subsidiaries, affiliates, officers, directors, employees, servants, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives, hereby release, acquit and forever discharge of and from the Claims the Hospital, and its respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representative.

5.      Definition of Claims. For the purposes of this Agreement, the term "Claims" shall mean any and all debts, demands, claims, allegations, actual or derivative obligations, agreements, sums of money, accounts, bills, covenants, contracts, claims of indemnity, claims of contribution, conveyances, leases, liens, assignments, agreements, promises, representations, trespasses, damages, judgments, executions, controversies, demands, suits, proceeding, actions or causes of action of any kind or character whatsoever, whether at law, in equity or otherwise, and whether, known, unknown, suspected, or unsuspected, that the Hospital has held, may now hold, or hereafter can, shall, or may have or hold against any of the Defendant; or that the Defendant have held, may now hold or hereafter can, shall or may have or hold against the Hospital, for any kind or character of damage, injury, harm, or loss whatsoever, from the beginning of the world to the Effective Date of this Agreement. It being the intent of the parties that the definition of the "claim" is comprehensive and that no claim has been, intentionally or unintentionally, omitted through oversight or error from this Litigation.

6.      No Assignment of Claims. Each Party warrants that it owns the Claims that are being released, and that no part of any such Claims have been assigned or transferred to any other person or entity.

7.      Costs and Expenses.  Each party to this Agreement shall bear its own costs and expenses, including attorneys' fees, that have been or will be incurred in connection with this dispute.

8.      Enforcement of Terms.  In the event that any party hereto: (i) directly or indirectly contests, challenges, or attacks this Agreement or any of its provisions in any legal or equitable proceeding; or (ii) finds it reasonably necessary to seek enforcement of this Agreement by way of judicial proceeding, including declaratory judgment, the prevailing party (whether that party originally sought to enforce this Agreement or originally defended against enforcement) shall be entitled to, and the non-prevailing party shall bear, all costs of the prosecution and/or defense, legal fees and other expenses incurred by the prevailing party to such action (whether by intervention or otherwise as a result of such judicial proceeding).

9.      No Admission of Liability.  It is expressly agreed and understood by the parties hereto that the consideration given in connection with this Agreement is given in compromise of disputed claims and does not constitute an admission of liability by any party hereto.

10.      Numerous Originals.  It is expressly understood and agreed that this Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes, but in making proof of the Agreement, it shall only be necessary to produce one such counterpart.

11.      Binding on Successors.  It is expressly understood and agreed that this Agreement will be binding on each party and its successors, heirs, and assigns and will inure to the benefit of the parties herein and to their successors, heirs, and assigns.

12.      Entire Agreement.    This Agreement, together with the July 24, 2009 Comprehensive Mediated Settlement Agreement, the Motion to Compromise Controversy, the

20080436.20080436/582529.1

EXHIBIT B

Order Approving Motion to Compromise Controversy, and the Mutual Releases by and among the Hospital and the Defendants contain the entire agreement between the parties hereto and the terms of this Agreement are contractual and not mere recitals.

13.     Severability.  Should any term or provision of this Agreement be declared invalid by a court of competent jurisdiction, the parties agree that all other terms of this Agreement are binding and have full force and effect as if the invalid portion had not been included.

14.     Bankruptcy Court Jurisdiction and Venue.  All disputes in connection with this Agreement and the Comprehensive Mediated Settlement Agreement shall be subject to the continuing jurisdiction of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

15.     Captions.   The captions appearing at the commencement of the sections or paragraphs hereof are descriptive only and for convenience in reference.  Should there be any conflict between any such caption and the section or paragraph at the head or beginning of which it appears, the section or paragraph and not such caption shall control and govern the construction of this document.

16.     Waiver and Amendment.  No breach of this Agreement can be waived unless done in writing and signed by the party to be charged.  Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  This Agreement may be amended only by a written agreement executed by all of the parties hereto.

17.     Authority to Execute.  Each party represents, warrants, and covenants that such party has the authority or power to enter into the transactions contemplated herein.  Each party further represents and warrants that it has not been inducted into this Agreement by a statement,

action or representation of any kind or character made by the persons hereby released or any person or persons representing it, other than those made herein.

    18.   <u>Representation by Counsel</u>.  Each party to this Agreement has had the benefit of counsel of its own choice and has been afforded an opportunity to review this Agreement with chosen counsel.  Each party, after conferring with counsel, believes that it, and any entity for which such person is executing, is legally bound by this Agreement.  Each party further acknowledges and represents that it has carefully read this Agreement, understands it, and has executed it voluntarily and on its own best judgment.  This Agreement was prepared by the joint efforts of all parties and it is agreed that this Agreement shall be construed without consideration as to which party actually drafted this Agreement.

    EXECUTED effective on the date stated above.

NORTH BY GENERAL HOSPITAL, INC.

_____

Jay Stacy, President

AMT GROUP, INC.

By:_____
Name:_____
Title:_____

THOMAS MCNAULL

_____

Thomas McNaull, Individually

EXHIBIT B

STATE OF TEXAS      §
                            §
COUNTY OF _____   §

        This instrument was acknowledged before me on September ____, 2009, by Jay Stacy, as President of North Bay General Hospital, Inc.

                                        _____
                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF TEXAS

STATE OF_____   §
                            §
COUNTY OF _____   §

        This instrument was acknowledged before me on September ____, 2009, by Thomas McNaull, as President of AMT Group, Inc.

                                        _____
                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF TEXAS

STATE OF_____   §
                            §
COUNTY OF _____   §

        This instrument was acknowledged before me on September ____, 2009, by Thomas McNaull, individually.

                                          _____
                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF TEXAS

## MUTUAL RELEASE AGREEMENT BY AND AMONG NORTH BAY GENERAL HOSPITAL, INC., CLEAR THINKING GROUP, LLC AND JOSEPH MYERS

THIS MUTUAL RELEASE AGREEMENT (the "Agreement") is executed effective as of September ___, 2009 by and among North Bay General Hospital, Inc. ("North Bay" or the "Hospital") on the one hand, and Clear Thinking Group, LLC ("CTG") and Joseph Myers ('Myers") ("Defendant" whether one or more) on the other hand.

### RECITALS

WHEREAS, North Bay originally filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on February 9, 2005 in the United States Bankruptcy Court for the Southern District of Texas – Houston Division, Case No. 05-32121 (the "2005 Case"). At that time North Bay was a wholly owned subsidiary of AMT Group, Inc. ("AMT"). AMT is owned by Thomas McNaull ("McNaull").

WHEREAS, Daniel Patchin ("Patchin") of the law firm Walker Wilcox Matousek, LLP f/k/a McClain & Patchin, P.C.; ("WWM") was bankruptcy counsel for North Bay in the 2005 Case. In April of 2005, an unsecured creditors committee (the "Committee") was formed. At the initial meeting of the Committee, Arent Fox, LLP ("Arent Fox") was selected as counsel for the Committee and Barnet B. Skelton, Jr. of the law firm of Barnet B. Skelton, Jr., P.C. (collectively "Skelton") was selected as local counsel for the Committee.. Myers of CTG appeared, via a proxy, at the initial Committee meeting on behalf of Alliance Imaging.

WHEREAS, the 2005 Case resulted in a consensual plan of reorganization (the "Plan") which was confirmed on June 21, 2006. Schuyler G. Carroll ("Carroll" or "UCA") was appointed as the Unsecured Creditor Agent under the Plan. The Plan had an Effective Date of approximately July 31, 2005. While the Plan was agreed to by North Bay, its creditors, and

20080436.20080436/587395.1

EXHIBIT C

McNaull, the Plan was not successful. On July 8, 2008, North Bay filed the present bankruptcy case, Case No. 08-20368.

WHEREAS, on October 31, 2008, North Bay initiated adversary proceeding No. 08-3422.

WHEREAS, On December 30, 2008, the Debtor filed its Complaint against McNaull and AMT seeking to collect on the causes of action preserved in the 2005 Plan thereby initiating adversary proceeding No. 08-03489. On January 30, 2009, McNaull and AMT filed their motion to withdraw the reference seeking to have the matter considered by a United States District Judge. North Bay responded to the motion to withdraw the reference on April 21, 2009. (Adversary Proceedings Nos. 08-03422 and 08-03489 are collectively referred to as "Litigation".)

WHEREAS, the Debtor filed a Motion for Summary Judgment against McNaull. On July 23 and 24, 2009, the Parties mediated allegations and defenses of the Parties to the Litigation before Judge Marvin Isgur.

WHEREAS, the Defendant denies all of the allegations in the Litigation and denies any wrongdoing.

WHEREAS, in order to avoid the inconvenience and expense of litigation, the Hospital and Defendant desires to compromise and settle all matters and disputes relating directly or indirectly to any or all claims in the Litigation, whether known or unknown, and entered into a Comprehensive Mediated Settlement Agreement (the "Agreement"). The Agreement has been approved by the Honorable Judge Bohm.

<u>TERMS</u>

Therefore, for and in consideration of the payment referred to herein, the resolution of the matters and disputes between The Hospital and Defendant, and the mutual promises, covenants, and conditions set forth herein and in the Comprehensive Mediated Settlement Agreement, the parties agree as follows:

1.      <u>Payment to the Hospital</u>. Defendant has paid to the Hospital the sum of One Hundred Thousand and No/100 ($100,000.00).

2.      <u>Dismissal of Litigation</u>.   In further consideration of the parties' promises, obligations, and other actions agreed to be undertaken under this Agreement, and contemporaneously with the execution of this Agreement by each of the parties, the Hospital agreed to dismiss the Litigation with prejudice as to all claims asserted, or which may have been asserted.

3.      <u>Release by the Hospital</u>.  For and in consideration of the payment of the amounts set forth in Paragraph 1 herein, and the release set forth below, the Hospital, for itself, its successors (including any trustee, receiver, examiner, committee or estate representatives), parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representatives, hereby releases, acquits and forever discharges of and from the Claims Defendant and their respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives..

4.     <u>Release by Defendant.</u>  For and in consideration for the Hospital accepting the Payment and dismissing the Litigation, the Defendant, for themselves and their respective successors, parents, subsidiaries, affiliates, officers, directors, employees, servants, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives, hereby release, acquit and forever discharge of and from the Claims the Hospital, and its respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representative.

5.     <u>Definition of Claims</u>. For the purposes of this Agreement, the term "Claims" shall mean any and all debts, demands, claims, allegations, actual or derivative obligations, agreements, sums of money, accounts, bills, covenants, contracts, claims of indemnity, claims of contribution, conveyances, leases, liens, assignments, agreements, promises, representations, trespasses, damages, judgments, executions, controversies, demands, suits, proceeding, actions or causes of action of any kind or character whatsoever, whether at law, in equity or otherwise, and whether, known, unknown, suspected or unsuspected, that the Hospital has held, may now hold or hereafter can, shall or may have or hold against any of the Defendant; or that the Defendant have held, may now hold or hereafter can, shall or may have or hold against the Hospital, for any kind or character of damage, injury, harm or loss whatsoever, from the beginning of the world to the Effective Date of this Agreement. It being the intent of the parties that the definition of the "claim" is comprehensive and that no claim has been, intentionally or unintentionally, omitted through oversight or error from this Agreement.

6.     <u>No Assignment of Claims</u>.  Each party warrants that it owns the Claim that are being released, and that no part of any such Claims have been assigned or transferred to any other person or entity.

7.     <u>Costs and Expenses</u>.  Each party to this Agreement shall bear its own costs and expenses, including attorneys' fees, that have been or will be incurred in connection with this dispute.

8.     <u>Enforcement of Terms</u>.  In the event that any party hereto: (i) directly or indirectly contests, challenges, or attacks this Agreement or any of its provisions in any legal or equitable proceeding; or (ii) finds it reasonably necessary to seek enforcement of this Agreement by way of judicial proceeding, including declaratory judgment, the prevailing party (whether that party originally sought to enforce this Agreement or originally defended against enforcement) shall be entitled to, and the non-prevailing party shall bear, all costs of the prosecution and/or defense, legal fees and other expenses incurred by the prevailing party to such action (whether by intervention or otherwise as a result of such judicial proceeding).

9.     <u>No Admission of Liability</u>.  It is expressly agreed and understood by the parties hereto that the consideration given in connection with this Agreement is given in compromise of disputed claims and does not constitute an admission of liability by any party hereto; and that this Agreement is entered into for the purpose of avoiding expensive and protracted litigation.

10.     <u>Numerous Originals</u>.  It is expressly understood and agreed that this Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes, but in making proof of the Agreement, it shall only be necessary to produce one such counterpart.

11.     Binding on Successors. It is expressly understood and agreed that this Agreement will be binding on each party and its successors, heirs, and assigns and will inure to the benefit of the parties herein and to their successors, heirs, and assigns.

12.     Entire Agreement. This Agreement, together with the July 24, 2009 Comprehensive Mediated Settlement Agreement, the Motion to Compromise Controversy, the Order Approving Motion to Compromise Controversy, and the Mutual Releases by and among the Hospital and the Defendants contain the entire agreement between the parties hereto and the terms of this Agreement are contractual and not mere recitals.

13.     Severability. Should any term or provision of this Agreement be declared invalid by a court of competent jurisdiction, the parties agree that all other terms of this Agreement are binding and have full force and effect as if the invalid portion had not been included.

14.     Bankruptcy Court Jurisdiction and Venue. All disputes in connection with this Agreement and the Comprehensive Mediated Settlement Agreement shall be subject to the continuing jurisdiction of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

15.     Captions. The captions appearing at the commencement of the sections or paragraphs hereof are descriptive only and for convenience in reference. Should there be any conflict between any such caption and the section or paragraph at the head or beginning of which it appears, the section or paragraph and not such caption shall control and govern the construction of this document.

16.     Waiver and Amendment. No breach of this Agreement can be waived unless done in writing and signed by the party to be charged. Waiver of any one breach shall not be

deemed to be a waiver of any other breach of the same or any other provision hereof. This Agreement may be amended only by a written agreement executed by all of the parties hereto.

17.   Authority to Execute. Each party represents, warrants, and covenants that such party has the authority or power to enter into the transactions contemplated herein. Each party further represents and warrants that it has not been inducted into this Agreement by a statement, action or representation of any kind or character made by the persons hereby released or any person or persons representing it, other than those made herein.

18.   Representation by Counsel. Each party to this Agreement has had the benefit of counsel of its own choice and has been afforded an opportunity to review this Agreement with chosen counsel. Each party, after conferring with counsel, believes that it, and any entity for which such person is executing, is legally bound by this Agreement. Each party further acknowledges and represents that it has carefully read this Agreement, understands it, and has executed it voluntarily and on its own best judgment. This Agreement was prepared by the joint efforts of all parties and it is agreed that this Agreement shall be construed without consideration as to which party actually drafted this Agreement.

EXECUTED effective on the date stated above.

NORTH BY GENERAL HOSPITAL, INC.

_____

Jay Stacy, President


CLEAR THINKING GROUP, LLC

By:_____
Name:_____
Title:_____

JOSEPH MYERS

_____

Joseph Myers, Individually


STATE OF TEXAS      §
                    §
COUNTY OF _____ §

This instrument was acknowledged before me on September ____, 2009, by Jay Stacy, as President of North Bay General Hospital, Inc.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS


STATE OF_____    §
                           §
COUNTY OF _____   §

This instrument was acknowledged before me on September ____, 2009, by _____, as _____ of Clear Thinking Group, LLC.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF _____


STATE OF_____    §
                           §
COUNTY OF _____   §

This instrument was acknowledged before me on September ____, 2009, by Joseph Myers, Individually.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF _____

20080436.20080436/587395.1                                          EXHIBIT C

## MUTUAL RELEASE AGREEMENT BY AND AMONG NORTH BAY GENERAL HOSPITAL, INC., BARNET B. SKELTON, JR., P.C. AND BARNET B. SKELTON, JR., INDIVIDUALLY

THIS MUTUAL RELEASE AGREEMENT (the "Agreement") is executed effective as of September ___, 2009 by and among North Bay General Hospital, Inc. ("North Bay" or the "Hospital") on the one hand, and Barnet B. Skelton, Jr., P.C. and Barnet B. Skelton, Jr. (collectively "Defendant" whether one or more) on the other hand.

### RECITALS

WHEREAS, North Bay originally filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on February 9, 2005 in the United States Bankruptcy Court for the Southern District of Texas – Houston Division, Case No. 05-32121 (the "2005 Case"). At that time North Bay was a wholly owned subsidiary of AMT Group, Inc. ("AMT"). AMT is owned by Thomas McNaull ("McNaull").

WHEREAS, Daniel Patchin ("Patchin") of the law firm Walker Wilcox Matousek, LLP f/k/a McClain & Patchin, P.C.; ("WWM") was bankruptcy counsel for North Bay in the 2005 Case. In April of 2005, an unsecured creditors committee (the "Committee") was formed. At the initial meeting of the Committee, Arent Fox, LLP ("Arent Fox") was selected as counsel for the Committee and Barnet B. Skelton, Jr. of the firm of Barnet B. Skelton, Jr., P.C. (collectively "Skelton") was selected as local counsel for the Committee.. Joseph Myers ("Myers") of Clear Thinking Group, LLC ("CTG") appeared, via a proxy, at the initial Committee meeting on behalf of Alliance Imaging.

WHEREAS, the 2005 Case resulted in a consensual plan of reorganization (the "Plan") which was confirmed on June 21, 2006. Schuyler G. Carroll ("Carroll" or "UCA") was appointed as the Unsecured Creditor Agent under the Plan. The Plan had an Effective Date of

1

approximately July 31, 2005.  While the Plan was agreed to by North Bay, its creditors, and McNaull, the Plan was not successful.  On July 8, 2008, North Bay filed the present bankruptcy case, Case No. 08-20368.

WHEREAS, on October 31, 2008, North Bay initiated adversary proceeding No. 08-3422.

WHEREAS, On December 30, 2008, the Debtor filed its Complaint against McNaull and AMT seeking to collect on the causes of action preserved in the 2005 Plan thereby initiating adversary proceeding No. 08-03489.  On January 30, 2009, McNaull and AMT filed their motion to withdraw the reference seeking to have the matter considered by a United States District Judge.  North Bay responded to the motion to withdraw the reference on April 21, 2009. (Adversary Proceedings Nos. 08-03422 and 08-03489 are collectively referred to as "Litigation".)

WHEREAS, on July 23 and 24, 2009, the Parties mediated allegations and defenses of the Parties to the Litigation before Judge Marvin Isgur.

WHEREAS, the Defendant denies all of the allegations made in the Litigation and denies any wrongdoing.

WHEREAS, in order to avoid the inconvenience and expense of litigation, the Hospital and Defendant, desire to compromise and settle all matters and disputes relating directly or indirectly to any or all claims in the Litigation, whether known or unknown, and entered into a Comprehensive Mediated Settlement Agreement (the "Agreement").  The Agreementhas been approved by the Honorable Judge Bohm.

## TERMS

Therefore, for and in consideration of the payment referred to herein, the resolution of the matters and disputes between The Hospital and Defendant, and the mutual promises, covenants, and conditions set forth herein and in the Agreement, the parties agree as follows:

1.    Payment to the Hospital. Defendant has paid to the Hospital the sum of Ten Thousand and No/100 ($10,000.00).

2.    Dismissal of Litigation.   In further consideration of the parties' promises, obligations, and other actions agreed to be undertaken under this Agreement, and contemporaneously with the execution of this Agreement by each of the parties, the Hospital agreed to dismiss the Litigation with prejudice as to all claims asserted, or which may have been asserted.

3.    Release by the Hospital. For and in consideration of the payment of the amounts set forth in Paragraph 1 herein, and the release set forth below, the Hospital, for itself, its successors (including any trustee, receiver, examiner, committee or estate representations), parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representatives, hereby releases, acquits and forever discharges of and from the Claims Defendant and their respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives.

4.    Release by Defendant. For and in consideration for the Hospital accepting the Payment and dismissing the Litigation, the Defendant, for itself and its respective successors,

20080436.20080436/598525.1                                                                    EXHIBIT D

parents, subsidiaries, affiliates, officers, directors, employees, servants, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives, hereby release, acquit and forever discharge of and from the Claims the Hospital, and its respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representative.

5.      Definition of Claims. For the purposes of this Agreement, the term "Claims" shall mean any and all debts, demands, claims, allegations, actual or derivative obligations, agreements, sums of money, accounts, bills, covenants, contracts, claims of indemnity, claims of contribution, conveyances, leases, liens, assignments, agreements, promises, representations, trespasses, damages, judgments, executions, controversies, demands, suits, proceeding, actions or causes of action of any kind or character whatsoever, whether at law, in equity or otherwise, and whether, known, unknown, suspected or unsuspected, that the Hospital has held, may now hold or hereafter can, shall or may have or hold against any of the Defendant; or that the Defendant have held, may now hold or hereafter can, shall or may have or hold against the Hospital, for any kind or character of damage, injury, harm or loss whatsoever, from the beginning of the world to the Effective Date of this Agreement. It being the intent of the parties that the definition of the "claim" is comprehensive and that no claim has been, intentionally or unintentionally, omitted through oversight or error from this Agreement.

6.      No Assignment of Claims. Each party warrants that it owns the Claims that are being released, and that no part of any such Claims have been assigned or transferred to any other person or entity.

7.      Costs and Expenses.  Each party to this Agreement shall bear its own costs and expenses, including attorneys' fees, that have been or will be incurred in connection with this dispute.

8.      Enforcement of Terms.  In the event that any party hereto: (i) directly or indirectly contests, challenges, or attacks this Agreement or any of its provisions in any legal or equitable proceeding; or (ii) finds it reasonably necessary to seek enforcement of this Agreement by way of judicial proceeding, including declaratory judgment, the prevailing party (whether that party originally sought to enforce this Agreement or originally defended against enforcement) shall be entitled to, and the non-prevailing party shall bear, all costs of the prosecution and/or defense, legal fees and other expenses incurred by the prevailing party to such action (whether by intervention or otherwise as a result of such judicial proceeding).

9.      No Admission of Liability.  It is expressly agreed and understood by the parties hereto that the consideration given in connection with this Agreement is given in compromise of disputed claims and does not constitute an admission of liability by any party hereto.

10.     Numerous Originals.  It is expressly understood and agreed that this Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes, but in making proof of the Agreement, it shall only be necessary to produce one such counterpart.

11.     Binding on Successors.  It is expressly understood and agreed that this Agreement will be binding on each party and its successors, heirs, and assigns and will inure to the benefit of the parties herein and to their successors, heirs, and assigns.

12.     Entire Agreement.    This Agreement, together with the July 24, 2009 Comprehensive Mediated Settlement Agreement, the Motion to Compromise Controversy, the

Order Approving Motion to Compromise Controversy, and the Mutual Releases by and among the Hospital and the Defendants contain the entire agreement between the parties hereto and the terms of this Agreement are contractual and not mere recitals.

13.    Severability.  Should any term or provision of this Agreement be declared invalid by a court of competent jurisdiction, the parties agree that all other terms of this Agreement are binding and have full force and effect as if the invalid portion had not been included.

14.    Bankruptcy Court Jurisdiction and Venue.  All disputes in connection with this Agreement and the Comprehensive Mediated Settlement Agreement shall be subject to the continuing jurisdiction of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

15.    Captions.  The captions appearing at the commencement of the sections or paragraphs hereof are descriptive only and for convenience in reference.  Should there be any conflict between any such caption and the section or paragraph at the head or beginning of which it appears, the section or paragraph and not such caption shall control and govern the construction of this document.

16.    Waiver and Amendment.  No breach of this Agreement can be waived unless done in writing and signed by the party to be charged.  Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  This Agreement may be amended only by a written agreement executed by all of the parties hereto.

17.    Authority to Execute.  Each party represents, warrants, and covenants that such party has the authority or power to enter into the transactions contemplated herein.  Each party further represents and warrants that it has not been inducted into this Agreement by a statement,

action or representation of any kind or character made by the persons hereby released or any person or persons representing it, other than those made herein.

18.   Representation by Counsel.  Each party to this Agreement has had the benefit of counsel of its own choice and has been afforded an opportunity to review this Agreement with chosen counsel.  Each party, after conferring with counsel, believes that it, and any entity for which such person is executing, is legally bound by this Agreement.  Each party further acknowledges and represents that it has carefully read this Agreement, understands it, and has executed it voluntarily and on its own best judgment.  This Agreement was prepared by the joint efforts of all parties and it is agreed that this Agreement shall be construed without consideration as to which party actually drafted this Agreement.

EXECUTED effective on the date stated above.

NORTH BY GENERAL HOSPITAL, INC.

_____

Jay Stacy, President

BARNET B. SKELTON, JR., P.C.

By:_____
Name:_____
Title:_____

BARNET B. SKELTON, JR.

_____

Barnet B. Skelton, Jr., Individually

EXHIBIT D

STATE OF TEXAS                    §
                                 §
COUNTY OF _____            §

    This instrument was acknowledged before me on September ____, 2009, by Jay Stacy, as President of North Bay General Hospital, Inc.

                                                _____

                                                NOTARY PUBLIC IN AND FOR
                                                THE STATE OF TEXAS


STATE OF TEXAS                    §
                                 §
COUNTY OF HARRIS                  §

    This instrument was acknowledged before me on September ____, 2009, by Barnet B. Skelton, Jr., as President of Barnet B. Skelton, Jr., P.C.

                                                  _____

                                                NOTARY PUBLIC IN AND FOR
                                                THE STATE OF TEXAS


STATE OF TEXAS                    §
                                 §
COUNTY OF HARRIS                  §

    This instrument was acknowledged before me on September ____, 2009, by Barnet B. Skelton, Jr., individually.

                                                  _____

                                                NOTARY PUBLIC IN AND FOR
                                                THE STATE OF TEXAS

## MUTUAL RELEASE AGREEMENT BY AND AMONG NORTH BAY GENERAL HOSPITAL, INC., WALKER WILCOX MATOUSEK TEXAS, P.C. F/K/A MCCLAIN & PATCHIN, P.C. AND DANIEL F. PATCHIN

THIS MUTUAL RELEASE AGREEMENT (the "Agreement") is executed effective as of September ___, 2009 by and among North Bay General Hospital, Inc. ("North Bay" or the "Hospital") on the one hand, and Daniel Patchin ("Patchin") and Walker Wilcox Matousek, LLP ("WWM") ("Defendant" whether one or more) on the other hand.

### RECITALS

WHEREAS, North Bay originally filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on February 9, 2005 in the United States Bankruptcy Court for the Southern District of Texas – Houston Division, Case No. 05-32121 (the "2005 Case"). At that time North Bay was a wholly owned subsidiary of AMT Group, Inc. ("AMT"). AMT is owned by Thomas McNaull ("McNaull").

WHEREAS, Patchin of the law firm WWM was bankruptcy counsel for North Bay in the 2005 Case. In April of 2005, an unsecured creditors committee (the "Committee") was formed. At the initial meeting of the Committee, Arent Fox, LLP ("Arent Fox") was selected as counsel for the Committee and Barnet B. Skelton of the firm of Barnet B. Skelton, Jr., P.C. (collectively "Skelton") was selected as local counsel for the Committee.. Joseph Myers ("Myers") of Clear Thinking Group, LLC ("CTG") appeared, via a proxy, at the initial Committee meeting on behalf of Alliance Imaging.

WHEREAS, the 2005 Case resulted in a consensual plan of reorganization (the "Plan") which was confirmed on June 21, 2006. Schuyler G. Carroll ("Carroll" or "UCA") was appointed as the Unsecured Creditor Agent under the Plan. The Plan had an Effective Date of approximately July 31, 2005. While the Plan was agreed to by North Bay, its creditors, and

1

McNaull, the Plan was not successful.  On July 8, 2008, North Bay filed the present bankruptcy case, Case No. 08-20368.

WHEREAS, on October 31, 2008, North Bay initiated adversary proceeding No. 08-3422.

WHEREAS, On December 30, 2008, the Debtor filed its Complaint against McNaull and AMT seeking to collect on the causes of action preserved in the 2005 Plan thereby initiating adversary proceeding No. 08-03489.  On January 30, 2009, McNaull and AMT filed their motion to withdraw the reference seeking to have the matter considered by a United States District Judge.  North Bay responded to the motion to withdraw the reference on April 21, 2009. (Adversary Proceedings Nos. 08-03422 and 08-03489 are collectively referred to as "Litigation".)

WHEREAS, on July 23 and 24, 2009, the Parties mediated allegations and defenses of the Parties to the Litigation before Judge Marvin Isgur.

WHEREAS, the Defendant denies all of the allegations made in the Litigation and denies any wrongdoing.

WHEREAS, in order to avoid the inconvenience and expense of litigation, the Hospital and Defendant desire to compromise and settle all matters and disputes relating directly or indirectly to any or all claims in the Litigation, whether known or unknown, and entered into a Comprehensive Mediated Settlement Agreement (the "Agreement").  The Agreement has been approved by the Honorable Judge Bohm.

EXHIBIT E

## TERMS

Therefore, for and in consideration of the payment referred to herein, the resolution of the matters and disputes between The Hospital and Defendant, and the mutual promises, covenants, and conditions set forth herein and in the Agreement, the parties agree as follows:

1.     <u>Payment to the Hospital</u>. Defendant has paid to the Hospital the sum of Six Hundred Fifty Thousand and No/100 ($650,000.00).

2.     <u>Dismissal of Litigation</u>.   In further consideration of the parties' promises, obligations, and other actions agreed to be undertaken under this Agreement, and contemporaneously with the execution of this Agreement by each of the parties, the Hospital agreed to dismiss the Litigation with prejudice as to all claims asserted, or which may have been asserted.

3.     <u>Release by the Hospital</u>. For and in consideration of the payment of the amounts set forth in Paragraph 1 herein, and the release set forth below, the Hospital, for itself, its successors (including any trustee, receiver, examiner, committee or estate representatives), parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representatives, hereby releases, acquits, and forever discharges of and from the Claims Defendant and their respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives.

4.     <u>Release by Defendant.</u> For and in consideration for the Hospital accepting the Payment and dismissing the Litigation, the Defendant, for themselves and their respective

EXHIBIT E

successors, parents, subsidiaries, affiliates, officers, directors, employees, servants, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives, hereby release, acquit, and forever discharge the of and from the Claims Hospital, and its respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representative.

5.      Definition of Claims. For the purposes of this Agreement, the term "Claims" shall mean any and all debts, demands, claims, allegations, actual or derivative obligations, agreements, sums of money, accounts, bills, covenants, contracts, claims of indemnity, claims of contribution, conveyances, leases, liens, assignments, agreements, promises, representations, trespasses, damages, judgments, executions, controversies, demands, suits, proceeding, actions or causes of action of any kind or character whatsoever, whether at law, in equity or otherwise, and whether, known, unknown, suspected, or unsuspected, that the Hospital has held, may now hold or hereafter can, shall or may have or hold against any of the Defendant; or that the Defendant have held, may now hold or hereafter can, shall or may have or hold against the Hospital, for any kind or character of damage, injury, harm or loss whatsoever, from the beginning of the world to the Effective Date of this Agreement. It being the intent of the parties that the definition of the "claim" is comprehensive and that no claim has been, intentionally or unintentionally, omitted through oversight or error from this Agreement.

6.      No Assignment of Claims. Each party warrants that it owns the Claims that are being released, and that no part of any such Claims have been assigned or transferred to any other person or entity.

EXHIBIT E

7.      <u>Costs and Expenses</u>.  Each party to this Agreement shall bear its own costs and expenses, including attorneys' fees, that have been or will be incurred in connection with this dispute.

8.      <u>Enforcement of Terms</u>.  In the event that any party hereto: (i) directly or indirectly contests, challenges, or attacks this Agreement or any of its provisions in any legal or equitable proceeding; or (ii) finds it reasonably necessary to seek enforcement of this Agreement by way of judicial proceeding, including declaratory judgment, the prevailing party (whether that party originally sought to enforce this Agreement or originally defended against enforcement) shall be entitled to, and the non-prevailing party shall bear, all costs of the prosecution and/or defense, legal fees and other expenses incurred by the prevailing party to such action (whether by intervention or otherwise as a result of such judicial proceeding).

9.      <u>No Admission of Liability</u>.  It is expressly agreed and understood by the parties hereto that the consideration given in connection with this Agreement is given in compromise of disputed claims and does not constitute an admission of liability by any party hereto; and that this Agreement is entered into for the purpose of avoiding expensive and protracted litigation.

10.     <u>Numerous Originals</u>.  It is expressly understood and agreed that this Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes, but in making proof of the Agreement, it shall only be necessary to produce one such counterpart.

11.     <u>Binding on Successors</u>.  It is expressly understood and agreed that this Agreement will be binding on each party and its successors, heirs, and assigns and will inure to the benefit of the parties herein and to their successors, heirs and assigns.

EXHIBIT E

12.    Entire Agreement.    This Agreement, together with the July 24, 2009 Comprehensive Mediated Settlement Agreement, the Motion to Compromise Controversy, the Order Approving Motion to Compromise Controversy, and the Mutual Releases by and among the Hospital and the Defendants contain the entire agreement between the parties hereto and the terms of this Agreement are contractual and not mere recitals.

13.    Severability. Should any term or provision of this Agreement be declared invalid by a court of competent jurisdiction, the parties agree that all other terms of this Agreement are binding and have full force and effect as if the invalid portion had not been included.

14.    Bankruptcy Court Jurisdiction and Venue.   All disputes in connection with this Agreement and the Comprehensive Mediated Settlement Agreement shall be subject to the continuing jurisdiction of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

15.    Captions.   The captions appearing at the commencement of the sections or paragraphs hereof are descriptive only and for convenience in reference.  Should there be any conflict between any such caption and the section or paragraph at the head or beginning of which it appears, the section or paragraph and not such caption shall control and govern the construction of this document.

16.    Waiver and Amendment.  No breach of this Agreement can be waived unless done in writing and signed by the party to be charged.  Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  This Agreement may be amended only by a written agreement executed by all of the parties hereto.

17.    Authority to Execute.  Each party represents, warrants, and covenants that such party has the authority or power to enter into the transactions contemplated herein.  Each party

further represents and warrants that it has not been inducted into this Agreement by a statement, action or representation of any kind or character made by the persons hereby released or any person or persons representing it, other than those made herein.

18. Representation by Counsel. Each party to this Agreement has had the benefit of counsel of its own choice and has been afforded an opportunity to review this Agreement with chosen counsel. Each party, after conferring with counsel, believes that it, and any entity for which such person is executing, is legally bound by this Agreement. Each party further acknowledges and represents that it has carefully read this Agreement, understands it, and has executed it voluntarily and on its own best judgment. This Agreement was prepared by the joint efforts of all parties and it is agreed that this Agreement shall be construed without consideration as to which party actually drafted this Agreement.

EXECUTED effective on the date stated above.

NORTH BY GENERAL HOSPITAL, INC.

_____

Jay Stacy, President


WALKER WILCOX MATOUSEK TEXAS, P.C. F/K/A MCCLAIN & PATCHIN, P.C.

By:_____

Name:_____

Title:_____


DANIEL F. PATCHIN

_____

Daniel F. Patchin, Individually

7

STATE OF TEXAS       §
                               §
COUNTY OF _____ §

      This instrument was acknowledged before me on September ____, 2009, by Jay Stacy, as President of North Bay General Hospital, Inc.

                                        _____

                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF TEXAS

STATE OF_____ §
                               §
COUNTY OF _____ §

      This instrument was acknowledged before me on September ____, 2009, by _____ of Walker Wilcox Matousek Texas, P.C. f/k/a McClain & Patchin, P.C..

                                         _____

                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF _____

STATE OF_____ §
                               §
COUNTY OF _____ §

      This instrument was acknowledged before me on September ____, 2009, by Daniel F. Patchin, individually.

                                         _____

                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF _____

20080436.20080436/587317.1

EXHIBIT E

## MUTUAL RELEASE AGREEMENT BY AND AMONG NORTH BAY GENERAL HOSPITAL, INC., ARENT FOX LLP AND SCHUYLER G. CARROLL

THIS MUTUAL RELEASE AGREEMENT (the "Agreement") is executed effective as of September ___, 2009 by and among North Bay General Hospital, Inc. ("North Bay" or the "Hospital") on the one hand, and Arent Fox LLP and Schuyler G. Carroll ("Defendant", whether one or more) on the other hand.

### RECITALS

WHEREAS, North Bay originally filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on February 9, 2005 in the United States Bankruptcy Court for the Southern District of Texas – Houston Division, Case No. 05-32121 (the "2005 Case"). At that time North Bay was a wholly owned subsidiary of AMT Group, Inc. ("AMT"). AMT is owned by Thomas McNaull ("McNaull").

WHEREAS, Daniel Patchin ("Patchin") of the law firm Walker Wilcox Matousek, LLP f/k/a McClain & Patchin, P.C.; ("WWM") was bankruptcy counsel for North Bay in the 2005 Case. In April of 2005, an unsecured creditors committee (the "Committee") was formed. At the initial meeting of the Committee, Arent Fox LLP ("Arent Fox") was selected as counsel for the Committee and Barnet B. Skelton, Jr., P.C. ("Skelton") was selected as local counsel for the Committee.

WHEREAS, the 2005 Case resulted in a consensual plan of reorganization (the "Plan") which was confirmed on June 21, 2006. Schuyler G. Carroll ("Carroll" or "UCA") was appointed as the Unsecured Creditor Agent under the Plan. The Plan had an Effective Date of approximately July 31, 2005. While the Plan was agreed to by North Bay, its creditors, and

EXHIBIT F

McNaull, the Plan was not successful. On July 8, 2008, North Bay filed the present bankruptcy case, Case No. 08-20368.

WHEREAS, on October 31, 2008, North Bay initiated adversary proceeding No. 08-3422 (the "Litigation"). .

WHEREAS, on July 23 and 24, 2009, the Parties mediated allegations and defenses of the Parties to the Litigation before Judge Marvin Isgur.

WHEREAS, the Defendant denies all of the allegations made in the Litigation and denies any wrongdoing.

WHEREAS, in order to avoid the inconvenience and expense of litigation, the Hospital and Defendant desire to compromise and settle all matters and disputes relating directly or indirectly to any or all claims in the Litigation, whether known or unknown, and entered into a Comprehensive Mediated Settlement Agreement (the "Agreement"). The Agreement has been approved by the Honorable Judge Bohm.

<u>TERMS</u>

Therefore, for and in consideration of the payment referred to herein, the resolution of the matters and disputes between The Hospital and Defendant, and the mutual promises, covenants, and conditions set forth herein and in the Agreement, the parties agree as follows:

1.      <u>Payment to the Hospital ("Payment")</u>. Defendant has paid to the Hospital the sum of One Thousand Dollars $1,000.00. The Hospital has sold and assigned, and Arent Fox has purchased and received, a promissory note from AMT Group, Inc. in the amount of $565,000.00 payable to North Bay General Hospital, Inc. ("Note"). Arent Fox has paid the Hospital $565,000.00 to purchase the Note.

EXHIBIT F

2.    Dismissal of Litigation.  In further consideration of the parties' promises, obligations, and other actions agreed to be undertaken under this Agreement, and contemporaneously with the execution of this Agreement by each of the parties, the Hospital agreed to dismiss the Litigation with prejudice as to all claims asserted, or which may have been asserted.

3.    Release by the Hospital.  For and in consideration of the payment of the amounts set forth in Paragraph 1 herein, and the release set forth below, the Hospital, for itself, its successors (including any trustee, receiver, examiner, committee, or estate representations), parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representatives, hereby releases, acquits, and forever discharges of and from the Claims Defendant and their respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives, and any other party acting in concert with them on and from the Claims.

4.    Release by Defendant.  For and in consideration for the Hospital's accepting the Payment, the dismissal with prejudice of the Litigation, the allowance of the Arent Fox proof of claim, and the release provided herein, the Defendant, for themselves and their respective successors, parents, subsidiaries, affiliates, officers, directors, employees, servants, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors, and representatives, hereby release, acquit and forever discharge of and from the Claims the Hospital, and its respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members,

managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representative, of and from the Clams (as defined below).

5.   Definition of Claims. For the purposes of this Agreement, the term "Claims" shall mean any and all debts, demands, claims, allegations, actual or derivative obligations, agreements, sums of money, accounts, bills, covenants, contracts, claims of indemnity, claims of contribution, conveyances, leases, liens, assignments, agreements, promises, representations, trespasses, damages, judgments, executions, controversies, demands, suits, proceeding, actions or causes of action of any kind or character whatsoever, whether at law, in equity or otherwise, and whether, known, unknown, suspected, or unsuspected, that the Hospital has held, may now hold, or hereafter can, shall, or may have or hold against any of the Defendant; or that the Defendant have held, may now hold or hereafter can, shall or may have or hold against the Hospital, for any kind or character of damage, injury, harm or loss whatsoever, from the beginning of the world to the Effective Date of this Agreement.  Nothing in this Release is intended to alter or effect the rights and obligations created or arising out of the Retained Rights provisions of this Agreement.  It being the intent of the parties that the definition of the "claim" is comprehensive and that no claim has been, intentionally or unintentionally, omitted through oversight or error from this Agreement.

6.   Retained Rights.  It is expressly agreed by the Hospital and Arent Fox that nothing in this Agreement shall affect Arent Fox's proof of claim in the amount of $144,696.93; provided however, that the proof of claim shall become an allowed claim only upon payment in full of the Payment, in cash, to the Hospital as provided in paragraph 1 above and the Arent Fox proof of claim shall be entitled to a pro rata distribution only after all other allowed unsecured

EXHIBIT F

20080436.20080436/582054.2

claims have received a fifteen percent (15%) distribution from the Hospital or its bankruptcy estate.

7.      <u>No Assignment of Claims</u>. Each party warrants that it owns the Claims that are being released, and that no part of any such Claims have been assigned or transferred to any other person or entity.

8.      <u>Costs and Expenses</u>. Each party to this Agreement shall bear its own costs and expenses, including attorneys' fees, that have been or will be incurred in connection with this dispute.

9.      <u>Enforcement of Terms</u>. In the event that any party hereto: (i) directly or indirectly contests, challenges, or attacks this Agreement or any of its provisions in any legal or equitable proceeding; or (ii) finds it reasonably necessary to seek enforcement of this Agreement by way of judicial proceeding, including declaratory judgment, the prevailing party (whether that party originally sought to enforce this Agreement or originally defended against enforcement) shall be entitled to, and the non-prevailing party shall bear, all costs of the prosecution and/or defense, legal fees and other expenses incurred by the prevailing party to such action (whether by intervention or otherwise as a result of such judicial proceeding).

10.     <u>No Admission of Liability</u>. It is expressly agreed and understood by the parties hereto that the consideration given in connection with this Agreement is given in compromise of disputed claims and does not constitute an admission of liability by any party hereto.

11.     <u>Numerous Originals</u>. It is expressly understood and agreed that this Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes, but in making proof of the Agreement, it shall only be necessary to produce one such counterpart.

12.     Binding on Successors.  It is expressly understood and agreed that this Agreement will be binding on each party and its successors, heirs, and assigns and will inure to the benefit of the parties herein and to their successors, heirs, and assigns.

13.     Entire Agreement.     This Agreement, together with the July 24, 2009 Comprehensive Mediated Settlement Agreement, the Motion to Compromise Controversy, the Order Approving Motion to Compromise Controversy, and the Mutual Releases by and among the Hospital and the Defendants contain the entire agreement between the parties hereto and the terms of this Agreement are contractual and not mere recitals.

14.     Severability.  Should any term or provision of this Agreement be declared invalid by a court of competent jurisdiction, the parties agree that all other terms of this Agreement are binding and have full force and effect as if the invalid portion had not been included.

15.     Bankruptcy Court Jurisdiction and Venue.  All disputes in connection with this Agreement and the Comprehensive Mediated Settlement Agreement shall be subject to the continuing jurisdiction of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

16.     Captions.  The captions appearing at the commencement of the sections or paragraphs hereof are descriptive only and for convenience in reference.  Should there be any conflict between any such caption and the section or paragraph at the head or beginning of which it appears, the section or paragraph and not such caption shall control and govern the construction of this document.

17.     Waiver and Amendment.  No breach of this Agreement can be waived unless done in writing and signed by the party to be charged.  Waiver of any one breach shall not be

deemed to be a waiver of any other breach of the same or any other provision hereof. This Agreement may be amended only by a written agreement executed by all of the parties hereto.

18.　　Authority to Execute. Each party represents, warrants, and covenants that such party has the authority or power to enter into the transactions contemplated herein. Each party further represents and warrants that it has not been inducted into this Agreement by a statement, action or representation of any kind or character made by the persons hereby released or any person or persons representing it, other than those made herein.

19.　　Representation by Counsel. Each party to this Agreement has had the benefit of counsel of its own choice and has been afforded an opportunity to review this Agreement with chosen counsel. Each party, after conferring with counsel, believes that it, and any entity for which such person is executing, is legally bound by this Agreement. Each party further acknowledges and represents that it has carefully read this Agreement, understands it, and has executed it voluntarily and on its own best judgment. This Agreement was prepared by the joint efforts of all parties and it is agreed that this Agreement shall be construed without consideration as to which party actually drafted this Agreement.

EXECUTED effective on the date stated above.

NORTH BY GENERAL HOSPITAL, INC.

_____
Jay Stacy, President

ARENT FOX LLP

By:_____
Name:_____
Title:_____

7

EXHIBIT F

SCHUYLER G. CARROLL

_____

Schuyler G. Carroll, Individually

STATE OF TEXAS        §
                      §
COUNTY OF _____  §

    This instrument was acknowledged before me on September ____, 2009, by Jay Stacy, as President of North Bay General Hospital, Inc.

_____

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

STATE OF_____  §
                         §
COUNTY OF _____   §

    This instrument was acknowledged before me on September ____, 2009, by _____, as _____ of Arent Fox LLP.

_____

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

STATE OF_____  §
                         §
COUNTY OF _____   §

    This instrument was acknowledged before me on September ____, 2009, by Schuyler G. Carroll.

_____

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

# DEFENDANTS' MUTUAL RELEASE AGREEMENT

THIS MUTUAL RELEASE AGREEMENT (the "Agreement") is executed effective as of September ___, 2009 by and among AMT Group, Inc. ("AMT"); Thomas McNaull ("McNaull"); Daniel F. Patchin ("Patchin"); Walker Wilcox Matousek Texas, P.C. f/k/a McClain & Patchin, P.C. ("WWM"); Joseph Myers ("Myers"); Clear Thinking Group, LLC ("CTG"); Arent Fox LLP ("Arent Fox"); Schuyler G. Carroll ("Carroll" or "UCA"); Barnet B. Skelton, Jr., P.C. ("Skelton P.C."); and Barnet B. Skelton, Jr. ("Skelton") (all of whom are collectively referred to herein as "Defendants" and any one of whom is referred to as "Defendant")).

## RECITALS

WHEREAS, North Bay General Hospital, Inc. ("North Bay") originally filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on February 9, 2005 in the United States Bankruptcy Court for the Southern District of Texas – Houston Division, Case No. 05-32121 (the "2005 Case"). At that time North Bay was a wholly owned subsidiary of AMT. AMT is owned by McNaull.

WHEREAS, Patchin of the law firm WWM was bankruptcy counsel for North Bay in the 2005 Case. In April of 2005, an unsecured creditors committee (the "Committee") was formed. At the initial meeting of the Committee, Arent Fox was selected as counsel for the Committee and Skelton of the firm of Skelton P.C. was selected as local counsel for the Committee. Myers of CTG appeared, via a proxy, at the initial Committee meeting on behalf of Alliance Imaging.

WHEREAS, the 2005 Case resulted in a consensual plan of reorganization (the "Plan") which was confirmed on June 21, 2006. Carroll was appointed as the Unsecured Creditor Agent under the Plan. The Plan had an Effective Date of approximately July 31, 2005. While the Plan

1

EXHIBIT G

was agreed to by North Bay, its creditors, and McNaull, the Plan was not successful. On July 8, 2008, North Bay filed the present bankruptcy case, Case No. 08-20368.

WHEREAS, on October 31, 2008, North Bay initiated adversary proceeding No. 08-3422 (the "Litigation").

WHEREAS, on July 23 and 24, 2009, the Parties mediated allegations and defenses of the Parties to the Litigation before Judge Marvin Isgur.

WHEREAS, in order to avoid the inconvenience and expense of litigation, the Hospital and Defendants desire to compromise and settle all matters and disputes relating directly or indirectly to any or all claims in the Litigation, whether known or unknown, and entered into a Comprehensive Mediated Settlement Agreement (the "Agreement"). The Agreement has been approved by the Honorable Judge Bohm.

WHEREAS, the Defendants desire, as part of the Agreement, to resolve any and all matters and disputes relating directly or indirectly to any or all claims in the Adversary Proceeding, whether known or unknown, which may exist as between or among them, and they enter into this Release to resolve such issues.

<u>TERMS</u>

Therefore, for and in consideration of the payments referred in the Agreement, the resolution of the matters and disputes between the Hospital and Defendants, and the mutual promises, covenants, and conditions set forth herein and in the Agreement, the parties agree as follows:

1.      <u>Payment to the Hospital</u>. Defendants have paid to the Hospital the sum or sums set forth in the Agreement.

2

2.      Dismissal of Litigation.   In further consideration of the parties' promises, obligations, and other actions agreed to be undertaken under this Agreement, and contemporaneously with the execution of this Agreement by each of the parties, the Hospital agreed to dismiss the Litigation with prejudice as to all claims asserted, or which may have been asserted, and the Defendants agree that the Bankruptcy Court's approval of the Agreement, will result in the dismissal, with prejudice, of any and all claims that any Defendant may have against any other Defendant arising out of, in connection with, or related to the 2005 Case and the Litigation.

3.      Release by and among the Defendants.   For and in consideration of the payment of the amounts set forth in Paragraph 1 herein, the Hospital's release of the Defendants, and the release set forth below, each Defendant, for itself, its successors (including any trustee, receiver, examiner, committee, or estate representatives), parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, assignees, transferees, and representatives, hereby releases, acquits, and forever discharges of and from the Claims each and every other Defendant and their respective successors, parents, subsidiaries, affiliates, officers, directors, shareholders, members, managers, partners, employees, servants, accountants, attorneys, insurers, sureties, agents, assignees, transferees, spouses, children, heirs, executors and representatives.

4.      Definition of Claims. For the purposes of this Agreement, the term "Claims" shall mean any and all debts, demands, claims, allegations, actual or derivative obligations, agreements, sums of money, accounts, bills, covenants, contracts, claims of indemnity, claims of contribution, conveyances, leases, liens, assignments, agreements, promises, representations, trespasses, damages, judgments, executions, controversies, demands, suits, proceeding, actions

EXHIBIT G

or causes of action of any kind or character whatsoever, whether at law, in equity or otherwise, and whether, known, unknown, suspected, or unsuspected, that any Defendant has held, may now hold, or hereafter can, shall, or may have or hold against any other Defendant, for any kind or character of damage, injury, harm, or loss whatsoever, from the beginning of the world to the Effective Date of this Release arising out of, in connection with or related to the 2005 Case and the Litigation. It being the intent of the parties that the definition of the "claim" is comprehensive and that no claim has been, intentionally or unintentionally, omitted through oversight or error from this Litigation.

5.     No Assignment of Claims.  Each party warrants that it owns the Claims that are being released, and that no part of any such Claims have been assigned or transferred to any other person or entity.

6.     Costs and Expenses.  Each party to this Agreement shall bear its own costs and expenses, including attorneys' fees, that have been or will be incurred in connection with this dispute.

7.     Enforcement of Terms.  In the event that any party hereto: (i) directly or indirectly contests, challenges, or attacks this Agreement or any of its provisions in any legal or equitable proceeding or (ii) finds it reasonably necessary to seek enforcement of this Agreement by way of judicial proceeding, including declaratory judgment, the prevailing party (whether that party originally sought to enforce this Agreement or originally defended against enforcement) shall be entitled to, and the non-prevailing party shall bear, all costs of the prosecution and/or defense, legal fees and other expenses incurred by the prevailing party to such action (whether by intervention or otherwise as a result of such judicial proceeding).

EXHIBIT G

8.     No Admission of Liability.  It is expressly agreed and understood by the parties hereto that the consideration given in connection with this Agreement is given in compromise of disputed claims and does not constitute an admission of liability by any party hereto; and that this Agreement is entered into solely for the purpose of avoiding expensive and protracted litigation.

9.     Numerous Originals.  It is expressly understood and agreed that this Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes, but in making proof of the Agreement, it shall only be necessary to produce one such counterpart.

10.    Binding on Successors.  It is expressly understood and agreed that this Agreement will be binding on each party and its successors, heirs, and assigns and will inure to the benefit of the parties herein and to their successors, heirs, and assigns.

11.    Entire Agreement.    This Agreement, together with the July 24, 2009 Comprehensive Mediated Settlement Agreement, the Motion to Compromise Controversy, the Order Approving Motion to Compromise Controversy, and the Mutual Releases by and among the Hospital and the Defendants contain the entire agreement between the parties hereto and the terms of this Agreement are contractual and not mere recitals.

12.    Severability.  Should any term or provision of this Agreement be declared invalid by a court of competent jurisdiction, the parties agree that all other terms of this Agreement are binding and have full force and effect as if the invalid portion had not been included.

13.    Bankruptcy Court Jurisdiction and Venue.  All disputes in connection with this Agreement and the Comprehensive Mediated Settlement Agreement shall be subject to the

EXHIBIT G

continuing jurisdiction of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

14.    Captions.   The captions appearing at the commencement of the sections or paragraphs hereof are descriptive only and for convenience in reference.   Should there be any conflict between any such caption and the section or paragraph at the head or beginning of which it appears, the section or paragraph and not such caption shall control and govern the construction of this document.

15.    Waiver and Amendment.   No breach of this Agreement can be waived unless done in writing and signed by the party to be charged.   Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.   This Agreement may be amended only by a written agreement executed by all of the parties hereto.

16.    Authority to Execute.   Each party represents, warrants and covenants that such party has the authority or power to enter into the transactions contemplated herein.   Each Party further represents and warrants that it has not been induced into this Agreement by a statement, action, or representation of any kind or character made by the persons hereby released or any person or persons representing it, other than those made herein.

17.    Representation by Counsel.   Each party to this Agreement has had the benefit of counsel of its own choice and has been afforded an opportunity to review this Agreement with chosen counsel.   Each party, after conferring with counsel, believes that it, and any entity for which such person is executing, is legally bound by this Agreement.   Each party further acknowledges and represents that it has carefully read this Agreement, understands it, and has executed it voluntarily and on its own best judgment.   This Agreement was prepared by the joint

EXHIBIT G

20080436.20080436/586300.1

efforts of all parties and it is agreed that this Agreement shall be construed without consideration as to which party actually drafted this Agreement.

EXECUTED effective on the date stated above.

AMT GROUP, INC.

By:_____
Name:_____
Title:_____

THOMAS MCNAULL

_____
Thomas McNaull, Individually

ARENT FOX LLP

By:_____
    William R. Charyk, Managing Partner

SCHUYLER G. CARROLL

_____
Schuyler G. Carroll, Individually

DANIEL F. PATCHIN

By:_____
    Daniel F. Patchin

WALKER WILCOX MATOUSEK TEXAS, P.C. F/K/A MCCLAIN & PATCHIN, P.C.

By:_____
Name:_____
Title:_____

20080436.20080436/586300.1

CLEAR THINKING GROUP, LLC

By:_____
Name:_____
Title:_____

JOSEPH MYERS

_____
Joseph Myers, Individually

BARNET B. SKELTON, JR., P.C.

By:_____
Name:_____
Title:_____

BARNET B. SKELTON, INDIVIDUALLY

By:_____
    Barnet B. Skelton, Individually


STATE OF_____      §
                        §
COUNTY OF _____      §

      This instrument was acknowledged before me on September ____, 2009, by Thomas McNaull.


_____
NOTARY PUBLIC IN AND FOR
THE STATE OF _____

EXHIBIT G

STATE OF_____   §
                             §
COUNTY OF _____      §

    This instrument was acknowledged before me on September ____, 2009, by Thomas McNaull, as President of AMT Group, Inc.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF _____

STATE OF_____   §
                             §
COUNTY OF _____      §

    This instrument was acknowledged before me on September ____, 2009, by William R. Charyk, as Managing Partner of Arent Fox, LLP.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF _____

STATE OF_____   §
                             §
COUNTY OF _____      §

    This instrument was acknowledged before me on September ____, 2009, by Schuyler G. Carroll.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF _____

EXHIBIT G

STATE OF_____     §
                             §
COUNTY OF _____      §

 This instrument was acknowledged before me on September ____, 2009, by Daniel F. Patchin.


       _____
       NOTARY PUBLIC IN AND FOR
       THE STATE OF _____


STATE OF_____     §
                             §
COUNTY OF _____      §

 This instrument was acknowledged before me on September ____, 2009, by _____, _____ of Walker Wilcox Matousek Texas, P.C. f/k/a McClain & Patchin, P.C.


       _____
       NOTARY PUBLIC IN AND FOR
       THE STATE OF _____


STATE OF_____     §
                             §
COUNTY OF _____      §

 This instrument was acknowledged before me on September ____, 2009, by _____, _____ of Clear Thinking Group, LLP.


       _____
       NOTARY PUBLIC IN AND FOR
       THE STATE OF _____

EXHIBIT G

STATE OF_____ §
                                              §
COUNTY OF _____ §

    This instrument was acknowledged before me on September ____, 2009, by Joseph Myers, Individually.


                        _____
                        NOTARY PUBLIC IN AND FOR
                        THE STATE OF _____


STATE OF_____ §
                                              §
COUNTY OF _____ §

    This instrument was acknowledged before me on September ____, 2009, by _____, _____ of Barnet B. Skelton, Jr., P.C.


                        _____
                        NOTARY PUBLIC IN AND FOR
                        THE STATE OF _____


STATE OF_____ §
                                              §
COUNTY OF _____ §

    This instrument was acknowledged before me on September ____, 2009, by Barnet B. Skelton, individually.


                        _____
                        NOTARY PUBLIC IN AND FOR
                        THE STATE OF _____

EXHIBIT G